UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BUFFALO LABORERS WELFARE FUND;
BUFFALO LABORERS PENSION FUND;  **DECISION AND ORDER**
BUFFALO LABORERS TRAINING FUND;
BUFFALO LABORERS SECURITY FUND;  18-CV-00544-JJM
THOMAS L. PANEK, in his fiduciary capacity
as ADMINIRATOR; LABORERS EMPLOYERS
COOPERATION AND EDUCATION TRUST;
and LABORERS' LOCAL 210, INTERNATIONAL
UNION OF NORTH AMERICA,

        Plaintiffs,
v.

LEONE CONSTRUCTION, INC.,

        Defendant
_____

    The parties have consented to my jurisdiction in this case [21].[1] Before the court is the motion by defendant Leone Construction, Inc. ("Leone") for partial summary judgment "limiting plaintiffs' audit period of [its] records [to] the period of January 1, 2014 through March 31, 2014" ([39], p. 2), and the motion by plaintiffs (collectively "the Funds") for partial summary judgment directing Leone "to submit to an audit of its books and records for the period of January 1, 2014 to March 31, 2015" ([40], p. 2). Oral argument was held on November 19, 2019. For the following reasons, Leone's motion is denied, and the Funds' motion is granted.

**BACKGROUND**

    The Funds seek to enforce Article XVI of the 2008-2014 collective bargaining agreement ("CBA") between Leone and Laborers' Local 210 [39-2], which requires Leone to

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

pay various fringe benefits to the Funds and gives the Funds the right to audit Leone's books and records to ensure compliance with its payment obligations. Article XXVII of the CBA contains what is commonly referred to as an "Evergreen Clause", which provides that "all the conditions of this Agreement shall remain in full force and effect from April 1, 2008 to March 31, 2014 and during each calendar year thereafter, unless on or before the 31st day of January, 2014, or any year thereafter, written notice of change in this Agreement be served by either party upon the other party."

On June 12, 2014 Local 210's business manager, Samuel Capitano, wrote to Leone, stating: "As per our conversation, our collective bargaining agreement expired on March 31, 2014. In order to continue excepting [*sic*] benefits on behalf of your employees . . . Local 210 needs a fully executed contract with Leone . . . . [W]e'd like to thank you for your business and for remaining a loyal employer" [39-3]. Although no new CBA was executed, Leone continued to make fringe benefit contributions to the Funds for work performed as late as October 2014 ([41-7], p. 96 of 111 (CM/ECF pagination). By letter dated August 7, 2015 the Funds assessed a penalty of $1,206.25 against Leone for delinquent fringe benefit contributions including the months of May, June, July and September 2014 (id., p. 111 of 111), and Leone paid that penalty by check date August 16, 2015 (id.).

**DISCUSSION**

Leone argues that because it and Local 210 agreed to terminate the CBA as of March 31, 2014, its obligations to the Funds terminated on that date as well. *See* Leone's

Memorandum of Law [39-4]. However, "benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations . . . . For this reason, Congress placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990). Therefore, notwithstanding the purported termination of the CBA by Local 210 and Leone, "only two defenses [to the Funds' claims are] recognized by the courts: (1) that the pension contributions themselves are illegal . . . and (2) that the collective bargaining agreement is void (not merely voidable)". Id.[2]

Leone does not suggest that its payments to the Funds were illegal, nor does it argue that the CBA was void. "[I]f an agreement is void, it cannot be a contract." Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co., 263 F.3d 26, 31 (2d Cir. 2001). "The distinction between void and voidable contracts and a fund's ability to enforce a contract makes sense, because when a contract is void, it is as if it never existed." Laborers' Pension Fund v. A & C Environmental, Inc., 301 F.3d 768, 779 (7th Cir. 2002); 1 Williston on Contracts § 1:20 (4th ed.).

Leone does not contend that the CBA never existed as a contract. Instead, it argues that "the parties did amend the [CBA] so that it would terminate on March 31, 2014". Leone's Memorandum of Law [39-4], p. 1. Since one cannot amend that which never existed,

---

[2] While an employer may also argue "the Agreement, by its own terms, does not require continuing contributions" (DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 654 (2d Cir. 1994)), in this case Article XVI of the CBA expressly created the obligations which the Funds seek to enforce.

the CBA was at most voidable by the parties rather than void altogether,[3] and its purported termination cannot defeat the Funds' claims. Benson, 907 F.2d at 314.

This conclusion is confirmed by Leone's payment of fringe benefits to the Funds for the months following the alleged termination of the CBA, as well as a penalty for delinquent contributions during those months ([47-1], p. 111 of 111), all of which would make no sense if Leone's obligations under the CBA had terminated on March 31, 2014. *See* Starr Indemnity and Liability Co. v. Brightstar Corp., 388 F. Supp. 3d 304, 329 (S.D.N.Y. 2019) ("the parties' course of performance under the contract is considered to be the most persuasive evidence of the[ir] agreed intention").

Moreover, Leone fails to submit an affidavit from anyone in the company explaining the reason for those payments, and "[t]he failure under the circumstances to call as witnesses those . . . who were in a position to know whether they acted in pursuance of [an] agreement is itself persuasive that their testimony, if given, would have been unfavorable. The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse . . . . Silence then becomes evidence of the most convincing character." Interstate Circuit v. United States, 306 U.S. 208, 226 (1939).

Having concluded that the alleged termination of the CBA on March 31, 2014 did not extinguish Leone's obligations to the Funds as of that date, I must next determine the duration of those obligations. It is undisputed that the June 12, 2014 letter [39-3] "was the

---

[3] "A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract." Quinio v. Aala, 344 F. Supp. 3d 464, 478 (E.D.N.Y. 2018); Restatement (Second) of Contracts, §7 (1981).

earliest written notice of change provided by either party to the 2008-2014 [CBA]". Capitano Declaration [41-1], ¶20. The Funds argue that "[a]s no timely written notice of change was provided on or before January 31, 2014, the 2008-2014 Agreement renewed automatically for the renewal term of April 1, 2014 to March 31, 2015", and claim that they are entitled to an audit for the period of January 1, 2014 to March 31, 2015." Funds' Memorandum of Law [41-15], p.13. They reason that "[t]he phrase 'calendar year' when read in conjunction with the rest of the renewal clause means a consecutive 365-day period beginning at any point. Because the [CBA] renewed automatically on April 1, 2014, the calendar year ends on March 31, 2015". Id., n. 3.

Leone responds that "[t]he plaintiffs' definition of 'calendar year' as being any consecutive 12-month period beginning at any time is laughable, as dictionaries, case law, and *common knowledge* define 'calendar year' as the time period of January 1 to December 31 only . . . . [T]he plaintiffs may audit Leone only for the 'calendar year' following the expiration of the CBA, and therefore for the period of January 1, 2014 to December 31, 2014 only". Leone's Memorandum of Law [42-1], p. 3 (emphasis I original). However, if a "calendar year" means "the time period of January 1 to December 31 only", then January 1 - December 31, 2014 is not the "calendar year following" March 31, 2014, since only nine months (April 1 - December 31, 2014) "follow" that date.

In effect, Leone asks me to rewrite the CBA to state that it "shall remain in full force and effect from April 1, 2008 to March 31, 2014 and during each *full or partial* calendar year thereafter". That I may not do, since courts have "no right to make a different contract from that actually made by the parties". 11 Williston, §31:5. I "may not by construction add or excise

terms under the guise of interpreting the writing". 10 Ellicott Square Court Corp. v. Mountain Valley Indemnity Co., 634 F.3d 112, 125 (2d Cir. 2011).

Whereas Leone's position is self-contradictory, the Funds' interpretation of "calendar year" as "a consecutive 365-day period beginning at any point" is an accepted alternative definition of that phrase. *See* State v. Jason B., 47 Conn. App. 68, 72, 702 A.2d 895, 897 (1997), aff'd, 248 Conn. 543, 729 A.2d 760 (1999), *quoting* Webster's Third New International Dictionary ("The term 'calendar year,' by itself, is not free of ambiguity. Webster provides two definitions: '1: a period of a year beginning and ending with the dates which are conventionally accepted as marking the beginning and end of a numbered year (as Jan. 1 and Dec. 31 in the Gregorian calendar) 2: a period of time equal in length to that of the year in the calendar conventionally in use (as in the Gregorian calendar 365 days or when a Feb. 29 is included 366 days)'"). Therefore, I agree with the Funds' interpretation of the audit period.

## CONCLUSION

For these reasons, Leone's motion for partial summary judgment [39] is denied, and the Funds' motion for partial summary judgment [40] is granted. Leone shall submit to the Funds' audit of its books and records for the period from January 1, 2014 to and including March 31, 2015.

**SO ORDERED.**

Dated: December 6, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge