UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

BUFFALO LABORERS WELFARE FUND;      :
BUFFALO LABORERS PENSION FUND; BUFFALO :
LABORERS TRAINING FUND; BUFFALO      :
LABORERS SECURITY FUND; THOMAS L.     :
PANEK, in his fiduciary capacity as      :   Docket No.: 1:18-cv-00544
ADMINISTRATOR; LABORERS EMPLOYERS  :
COOPERATION AND EDUCATION TRUST; AND :
LABORERS' LOCAL 210, INTERNATIONAL   :
UNION OF NORTH AMERICA,        :
                        :
        Plaintiffs,         :
                        :
   - against –          :
                        :
LEONE CONSTRUCTION, INC.,      :
                        :
       Defendant.       :

-------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON DAMAGES AGAINST DEFENDANT
LEONE CONSTRUCTION, INC.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................................... 10

ARGUMENT .................................................................................................................... 11

    I.  Defendant admits liability to the Audit findings, and Plaintiffs are entitled to
        Judgment on the Audit as a matter of law .................................................................. 11

    II.  Plaintiffs are entitled to judgment on the statutory and contractual damages
        as a matter of law. ................................................................................................... 14

        A.  Damages for Unpaid Fringe Benefit Contributions. ....................................... 14

            1.  Interest .................................................................................................. 14

            2.  Liquidated Damages ............................................................................. 15

            3.  Attorneys' Fees and Costs .................................................................... 15

            4.  Actual Audit Costs ................................................................................ 17

        B.  Damages for Unpaid LECET Contributions .................................................. 18

        C.  Damages for Unpaid Dues Checkoffs ........................................................... 19

        D.  Damages for Unpaid PAC Contributions ....................................................... 20

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)……………………………………..…10

*Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds
of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D
v. Eastport Excavation & Utils. Inc.*, 3 F.Supp. 3d 204 (S.D.N.Y. 2014)……………………13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008)....................................................................................15

*Beebe v. V&J Nat'l Enters., LLC*,
2020 U.S. Dist. LEXIS 96059 (W.D.N.Y. June 1, 2020) .......................................16

*BellSouth Telecomms. v. W.R. Grace & Co.*, 77 F.3d 603 (2d Cir. 1996).............................11

*Blum v. Stenson*, 465 U.S. 886 (1983) .................................................................15

*Buffalo Laborers Welfare Fund v. Di Pizio Constr. Co.*,
318 F. Supp. 3d 591 (W.D.N.Y. 2018) ..................................................................12

*Buffalo Laborers' Welfare Fund v. D. Land Constr. Co.*,
2010 U.S. Dist. LEXIS 103500, 2010 WL 3894987 (W.D.N.Y. Sept. 30, 2010) …………..14

*Buffalo Laborers Welfare Fund v. Elliott*,
2008 U.S. Dist. LEXIS 25610, 2008 WL 907385 (W.D.N.Y. Mar. 30, 2008) ......................18

*Buffalo Laborers Welfare Fund v. H&M Plumbing & Mech. Contracting, Inc.*,
2015 U.S. Dist. LEXIS 50342 (W.D.N.Y. Apr. 13, 2015) ......................................12

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996)...........................................11

*Mason Tenders Dist. Council v. Aurash Constr. Corp.*,
2006 U.S. Dist. LEXIS 10250, 2006 WL 647884 (S.D.N.Y. Mar. 15, 2006) ………………18

*Mason Tenders Dist. Council Welfare Fund v. City Stone, Inc.*,
2006 U.S. Dist. LEXIS 334, 2006 WL 41285 (S.D.N.Y. Jan. 9, 2006) ………………..…18

*Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.*,
2018 U.S. Dist. LEXIS 78427, 2018 WL 2138621 (S.D.N.Y. May 9, 2018) .............18, 19, 20

*Mason Tenders Dist. Council Welfare Fund, Pension Fund,
Annuity Fund, Training Fund, Health & Safety Fund v.
LJC Dismantling Corp.*, 400 F. Supp. 3d 7 (S.D.N.Y. 2019)...........................................19, 20

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*,
2019 U.S. Dist. LEXIS 1144, 2019 WL 95562 (S.D.N.Y. Jan. 3, 2019) ...............................13

*Mason Tenders District Council Welfare Fund v. Spray Force Systems, Inc., et al.*,
Docket No. 17-cv-00052-LAK-KNF, Doc. 67 (S.D.N.Y. Nov. 1, 2018)................................16

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................11

*N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*,
657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009).............................................................................16

*N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983)....................15

*Rochester Laborers' Welfare S.U.B. Fund v. Journee Constr., Inc.*,
305 F. Supp. 3d 444 (W.D.N.Y. 2018)…………………………………………………..16, 18

*Rochester Laborers' Welfare-S.U.B. Fund v. Flower City Monitors, Inc.*,
2017 U.S. Dist. LEXIS 117080, 2017 WL 3166920 (W.D.N.Y. July 26, 2017)……………14

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................................................................11

*32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co*., 935 F.3d 93 (2d Cir. 2019) ...............14

*Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Constr. Corp*,
2008 U.S. Dist. LEXIS 108690 (S.D.N.Y. June 19, 2008)......................................................16

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000)........................................................11

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) ...........................................11

**STATUTES**

26 U.S.C. § 6621..............................................................................................................9, 14, 20
ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ...........................................................................12
ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).............................................................9, 12, 14, 17
ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E) .................................................................17
ERISA § 515, 29 U.S.C. § 1145 ...............................................................................................12
LMRA § 301, 29 U.S.C. § 185 .................................................................................................12
N.Y. C.P.L.R. § 5001................................................................................................10, 18, 19, 20
N.Y. C.P.L.R. § 5002................................................................................................................10
N.Y. C.P.L.R. § 5004................................................................................................10, 18, 19, 20

**RULES**
Fed. R. Civ. P. 56......................................................................................................................1

# PRELIMINARY STATEMENT

Plaintiffs Buffalo Laborers Welfare Fund; Buffalo Laborers Pension Fund; Buffalo Laborers Training Fund; Buffalo Laborers Security Fund; Thomas L. Panek, in his capacity as Administrator ("Funds"); Laborers Employers Cooperation and Education Trust ("LECET"); and Laborers' Local 210, International Union of North America ("Union") (the Funds, LECET and the Union are hereinafter collectively "plaintiffs") through their attorneys Gorlick, Kravitz & Listhaus, P.C., respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on Damages against Leone Construction, Inc. pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") ("Motion").

There can be no doubt that Plaintiffs are entitled to summary judgment. Defendant Leone Construction Inc. ("Defendant" or "Leone") admits it is liable to Plaintiffs for $13,979.83 in principal fringe benefit contributions, $60.65 in principal LECET contributions; $1,151.82 in principal dues checkoffs, and $60.65 in principal New York State Laborers Political Action Committee ("PAC") contributions. ERISA and the Agreement both provide that where there is a finding that fringe benefit contributions are owed, an award of interest, liquidated damages, reasonable attorneys' fees and costs is mandatory. Courts within this Circuit routinely award actual audit costs under ERISA's provision for "other legal and equitable relief".

Defendant's failure to pay all required LECET contributions, dues checkoffs, and PAC contributions is a breach of the Agreement which this Court has already found Defendant was bound to for the period of January 1, 2014 through March 31, 2015. As a result, Defendant is liable to Plaintiffs for pre-judgment interest on the delinquent LECET contributions, dues checkoffs, and PAC contributions from the date the contributions and dues were due until entry of judgment at the statutory rate of 9% annually.

As Defendant concedes liability on the Audit findings, and there are no material facts in dispute, Plaintiffs are entitled to summary judgment on the unpaid fringe benefit contributions, LECET contributions, dues checkoffs, and PAC contributions, plus interest, liquidated damages, plaintiffs' reasonable attorneys' fees and costs, and the actual Audit costs.

## **STATEMENT OF FACTS[1]**

Plaintiffs commenced this Action on May 14, 2018. ECF Doc. 1. On June 18, 2018, Leone filed a pre-answer Motion to Dismiss. ECF Doc. 7 to 7-3. On June 18, 2018, Leone sent a letter to Plaintiffs cancelling the audit that had previously been scheduled. Plaintiffs' Rule 56.1 Statement ("Pl. 56.1 Stmt."), ¶3; Declaration of Joy K. Mele, dated July 8, 2020 ("Mele Decl."), ¶5. Leone sent another letter that same day to Plaintiffs regarding the Motion to Dismiss filed by Leone. Pl. 56.1 Stmt., ¶4; Mele Decl., ¶5. The June 18, 2018 letter regarding the Motion to Dismiss advised Plaintiffs that their Action was "palpably . . . lacking in merit", and as a result, counsel was in the process of drafting a Rule 11 motion. Pl. 56.1 Stmt., ¶5; Mele Decl., ¶5. Plaintiffs responded to both June 18, 2018 letters on June 21, 2018. Pl. 56.1 Stmt., ¶ 6; Mele Decl., ¶6.

Counsel for the parties had several communications thereafter regarding the audit and Leone's motion to dismiss, but could not reach agreement, and Plaintiffs filed their opposition to Leone's Motion to Dismiss on July 13, 2018. Mele Decl., ¶7; Pl. 56.1 Stmt., ¶7; ECF Doc. 10.

Leone filed its Reply Memorandum of Law in Further Support of Leone's Motion to Dismiss on July 27, 2018, raising for the first time two new legal arguments which it claimed supported dismissal of the Action. Mele Decl., ¶8; ECF Doc. 11. On August 1, 2018, Plaintiffs filed a letter motion requesting that the new arguments raised in Defendant's Reply be stricken

---

[1] Plaintiffs incorporate by reference the Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment Against Defendant Leone Construction, Inc. on Liability and for an Order Directing Leone to Submit to an Audit for the Period of January 1, 2014 to March 31, 2015 (ECF Doc. 41-15).

by the Court, or in the alternative, that Plaintiffs be granted permission to file a sur-reply to respond to the new arguments. Pl. 56.1 Stmt., ¶9; ECF Doc. 12.

On October 16, 2018, the Court issued a Text Order granting Plaintiffs' request to file a sur-reply. ECF Doc. 14. On October 25, 2018, Plaintiffs' filed their Sur-Reply to Reply Memorandum of Law in Further Support of Leone Construction's Motion to Dismiss Pursuant to Rule 12(b)(6). ECF Doc. 15. On October 31, 2018, the Honorable Frank P. Geraci, Jr., issued a Decision and Order denying Leone's Motion to Dismiss in its entirety. ECF Doc. 16. The Action was thereafter referred to mandatory mediation. Pl. 56.1 Stmt., ¶13; Mele Decl., ¶13.

On March 15, 2019, the parties consented to proceed before Magistrate Judge Jeremiah J. McCarthy. ECF Doc. 21. An initial pre-trial conference was held on March 21, 2019, at which time the Court granted the parties' request to opt out of mediation. Pl. 56.1 Stmt., ¶15; Mele Decl., ¶15.

Plaintiffs' Action sought, *inter alia*, an audit of Leone's books and records. ECF Doc. 1. On or about August 12, 2011, Leone entered into the 2008-2014 Highway-Heavy, Utility and Tunnel Agreement with the Union ("Agreement"). Pl. 56.1 Stmt., ¶16; ECF Doc. 41, ¶18; ECF Doc. 51, pp. 1-2.[2] The Agreement required Leone to make fringe benefit fund contributions to the Welfare Fund, the Pension Fund, the Training Fund, and the Security Fund for every hour of work performed by its employees within the trade and geographic jurisdiction of the Agreement ("Covered Work"). Pl. 56.1 Stmt., ¶17; ECF Doc. 51, pp. 1-2; ECF Doc. 41, ¶21; ECF Doc. 41-2, Agreement, Article XVI, Section 1-4 (bates stamped P0172). The Agreement required Leone to make contributions to the LECET for every hour of Covered Work performed by its employees. Pl. 56.1 Stmt., ¶18; ECF Doc. 22; ECF Doc. 41-2, Agreement, Article XVI, Section 5 (bates stamped P0173). The Agreement required Leone to deduct and remit to the Union dues

---

[2] Page numbers refer to the ECF header page number.

from the wages of its employees performing Covered Work. Pl. 56.1 Stmt., ¶19; ECF Doc. 41, ¶23; ECF Doc. 41-1, ¶13; ECF Doc. 41-2, Agreement, Article XIX, Section 8 (bates stamped P0177). The Agreement required Leone to deduct and remit to the Union PAC contributions from the wages of its employees performing Covered Work. Pl. 56.1 Stmt., ¶20; ECF Doc. 41, ¶23; ECF Doc. 41-1, ¶13; ECF Doc. 41-2, Agreement, Article XIX, Section 8 (bates stamped P0177-0178).

The Agreement provided that Leone was required to pay the cost of an audit in the event that an audit discloses a delinquency in excess of 10% of the prior year's contributions or $2,000.00, whichever is greater. Pl. 56.1 Stmt., ¶77; ECF Doc. 41-2, Agreement, Article XVI, Section 10(a) (bates stamped P0174). The Agreement also provided that in the event that formal proceedings are instituted before a Court of competent jurisdiction to collect delinquent contributions, a court renders judgment in favor of the Funds, the Employer shall pay to the Funds such other legal or equitable relief as the Court deems appropriate. Pl. 56.1 Stmt., ¶78; ECF Doc. 41-2, Agreement, Article XVI, Section 8(b) (bates stamped P0173).

That Leone was signatory to the Agreement that obligated it to make fringe benefit contributions to Plaintiffs Welfare Fund, Training Fund and Security Fund, contributions to LECET, and dues and PAC contributions to the Union was never in dispute. At issue was when the Agreement and its concomitant contribution obligations ended. Pl. 56.1 Stmt., ¶22; ECF Doc. 51. The central issue of the litigation for purposes of establishing liability was the period of time that the Agreement was in effect. Pl. 56.1 Stmt., ¶ 23; Mele Decl., ¶16.

The parties agreed that the case should proceed in two phases. The Liability Phase would address whether Leone was subject to the Agreement, and the Damages Phase would address the audit and the remainder of Plaintiffs' claims. Pl. 56.1 Stmt., ¶24; Mele Decl., ¶17. On April 9,

2019, the Court issued a Case Management Order bifurcating the action into liability and damages phases. ECF Doc. 25.

Plaintiffs served their First Request for the Production of Documents and First Set of Interrogatories on April 22, 2019. Pl. 56.1 Stmt., ¶26; Mele Decl., ¶19. Leone objected to the scope of Plaintiffs' initial discovery demands, and on May 7, 2019, submitted a letter to the Court requesting the Court's guidance on the discovery dispute. Pl. 56.1 Stmt., ¶27; Mele Decl., ¶20.

A telephonic conference was held on May 10, 2019, to discuss the discovery dispute, and on that same day, the Court issued a Text Order directing the parties to confer and submit proposals by May 24, 2019 for resolving the threshold issues of whether Plaintiff presented Leone with a new collective bargaining agreement before or after January 31, 2014, and if so, whether that constituted timely written notice of change under the evergreen clause of the existing Agreement. Pl. 56.1 Stmt., ¶28; ECF Doc. 28. The parties conferred but could not agree on a joint proposal and the parties filed separate proposals on May 31, 2019. Pl. 56.1 Stmt., ¶29; Mele Decl., ¶22.

Leone's proposal included taking one or more depositions of Plaintiffs and limited interrogatories and document requests. Plaintiffs had no objection to Leone's proposal to serve limited interrogatories, but did object to Leone's proposal for depositions. Pl. 56.1 Stmt., ¶30; Mele Decl., ¶23. A conference was held on June 13, 2019 to discuss the parties' May 31, 2019 proposals.  Pl. 56.1 Stmt., ¶31; Mele Decl., ¶24. On June 13, 2019, the Court issued a Text Order allowing Leone to take the deposition of Samuel Capitano, and allowing Plaintiffs to take the deposition of John Leone. Pl. 56.1 Stmt., ¶32; ECF Doc. 33.

The parties engaged in settlement negotiations in June and July, 2019, which proved

unsuccessful. Pl. 56.1 Stmt., ¶33; Mele Decl., ¶26. A conference was held on August 6, 2019, at which time the parties agreed that the issue of the time period of the audit was ripe for disposition without the need for depositions and further discovery, and the Court issued a Text Order that same day setting forth a briefing schedule on the parties' motions for partial summary judgment on liability. Pl. 56.1 Stmt., ¶34; ECF Doc. 36.

On September 20, 2019, the parties filed cross motions for partial summary judgment, which were fully briefed. Pl. 56.1 Stmt., ¶35; ECF Docs. 39 to 39-4 and 40 to 41-15. Oral argument on the motions took place on November 19, 2019. Pl. 56.1 Stmt., ¶36; Mele Decl., ¶29.

The parties thereafter had settlement negotiations, and by letter, dated November 25, 2019, Plaintiffs advised the Court that the parties had reached an agreement with respect to their cross-motions on liability. Pl. 56.1 Stmt., ¶37; Mele Decl., ¶30. However, on December 5, 2019, Plaintiffs advised the Court that the parties were unable to reach agreement on the terms of a stipulation resolving the motions for summary judgment. Pl. 56.1 Stmt., ¶38; Mele Decl., ¶31.

The Court resolved the issue of liability in its Decision and Order, dated December 6, 2019 when it denied Defendant Leone Construction, Inc.'s ("Defendant" or "Leone") motion for partial summary judgment limiting plaintiffs' audit period to the period of January 1, 2014 through March 31, 2014, and granted Plaintiffs' motion for summary judgment for an order directing Leone to submit to an audit of its books and records for the period of January 1, 2014 through March 31, 2015. Pl. 56.1 Stmt., ¶39; ECF Doc. 51. In so ruling, the Court held that the Agreement and Leone's obligations to Plaintiffs remained in effect through March 31, 2015. Pl. 56.1 Stmt., ¶40; ECF Doc. 51, p. 6.[3] The Court further held that the Plaintiff Funds have the right to audit Leone's books and records for the period of January 1, 2014 through March 31, 2015 to ensure compliance with Leone's payment obligations. Pl. 56.1 Stmt., ¶41; ECF Doc. 51, p. 6.

---

[3] The pages numbers refer to the ECF header page numbers.

Liability having been established, the Audit was conducted and revealed that Leone failed to pay Plaintiffs required fringe benefit contributions in the principal amount of $13,979.83, required LECET contributions in the principal amount of $60.65, required dues deductions in the principal amount of $1,151.82, and required PAC contributions in the principal amount of $60.65 for work performed by its employees within the trade and geographic jurisdiction of the Agreement ("Covered Work") during the Audit Period for a total principal deficiency of $15,252.95. Pl. 56.1 Stmt., ¶42; Declaration of Timothy P. Dooley ("Dooley Decl.") ¶12; Ex. 1 to Dooley Decl.; Mele Decl. ¶33. A copy of the Audit Report was sent to Leone by on January 31, 2020. Pl. 56.1 Stmt., ¶43; Mele Decl., ¶34.

Leone does not dispute the Audit findings. Pl. 56.1 Stmt., ¶44; Mele Decl., ¶¶35, 44-46; ECF Doc. 56; Ex. 1 to Mele Decl. In joint letters dated February 14, 2020, and April 13, 2020, the parties advised the Court that Leone does not dispute the Audit findings. Pl. 56.1 Stmt., ¶45; ECF Doc. 56; Ex. 1 to Mele Decl.

A telephonic conference was held on April 20, 2020, at which time the Court directed Leone's counsel to confer with Leone about entering into a stipulation concerning the Audit findings, and allowing Plaintiffs to serve requests to admit, interrogatories, or other appropriate discovery demands that do not require the production of documents. Pl. 56.1 Stmt., ¶46; ECF Doc. 59. Another telephonic conference was held on May 20, 2020, at which time the Court directed Plaintiffs to circulate a proposed judgment, and for the parties to work towards resolving any disputes with the proposed judgment. Pl. 56.1 Stmt., ¶47; ECF Doc. 61.

Plaintiffs emailed the proposed judgment to Leone and the Court on May 28, 2020, along with a letter detailing the damages sought and the authority for each of the damages in the proposed judgment. Pl. 56.1 Stmt., ¶48; Mele Decl., ¶39; Ex. 2 to Mele Decl. On June 8, 2020,

Leone requested backup for all amounts sought in the proposed judgment. Pl. 56.1 Stmt., ¶49; Mele Decl., ¶40; Ex. 3 to Mele Decl. On June 9, 2020, Plaintiffs provided to Leone tables showing the pre-judgment interest due to date on the principal fringe benefit contributions, LECET contributions, dues, and PAC contributions. Plaintiffs also provided a copy of the auditor's invoice for the Audit. Plaintiffs did not provide documentation supporting Plaintiffs' attorneys' fees and costs. Pl. 56.1 Stmt., ¶50; Mele Decl., ¶41; Ex. 4 to Mele Decl. Leone did not respond to the documentation provided on June 9, 2020. Pl. 56.1 Stmt., ¶51; Mele Decl., ¶42.

The proposed judgment included actual Audit costs. Ex. 2 to Mele Decl. In 2013, Leone paid $56,522.83 in fringe benefit contributions to the Funds. Pl. 56.1 Stmt., ¶80; Panek Decl., ¶¶8-21; Ex. 2 to Panek Decl. The audited principal fringe benefit delinquency of $13,979.83 is greater than 10% of the fringe benefit contributions Leone paid to the Funds in 2013. Pl. 56.1 Stmt., ¶81; Dooley Decl., ¶12; Ex. 1 to Dooley Decl.; Panek Decl., ¶¶8-21. As a result, Leone is contractually liable to the Funds for the cost of the Audit. Pl. 56.1 Stmt., ¶82; ECF Doc. 41-2, Agreement, Article XVI, Section 10(a) (bates stamped P0174). The Audit costs are $3,882.19. Pl. 56.1 Stmt., ¶83; Dooley Decl., ¶¶13-23; Ex. 2 to Dooley Decl.

Plaintiffs requested by email on June 16, 2020, whether Leone had made a decision on the proposed judgment. Pl. 56.1 Stmt., ¶52; Mele Decl., ¶43. Leone responded on June 18, 2020, that it agreed with the principal audited delinquency, and "can agree to interest." Pl. 56.1 Stmt., ¶53; Mele Decl., ¶44; Ex. 5 to Mele Decl. Plaintiffs confirmed by email on June 22, 2020, that Leone did not object to the Audit findings, and requested that Leone advise whether it consented to the other damages sought in the proposed judgment. Pl. 56.1 Stmt., ¶54; Mele Decl., ¶45. Leone responded that it was "fine with the audit findings" but did not advise whether it consented to the other damages. Pl. 56.1 Stmt., ¶55; Mele Decl., ¶46; Ex. 6 to Mele Decl.

Plaintiffs requested again on June 26, 2020, whether Leone consented to the other damages sought, or whether Plaintiffs would need to move for judgment. Pl. 56.1 Stmt., ¶56; Mele Decl., ¶47. Leone did not respond to Plaintiffs' email of June 26, 2020. Pl. 56.1 Stmt., ¶57; Mele Decl., ¶48.

Leone admits it is liable to the Funds for principal fringe benefit contributions found in the Audit, and as such is liable to the Funds for: (a) delinquent fringe benefit contributions in the principal amount of $13,979.83; (b) pre-judgment interest on the delinquent fringe benefit contributions through July 8, 2020 in the amount of $3,649.20 as calculated under 26 U.S.C. § 6621; (c) additional pre-judgment interest on the delinquent fringe benefit contributions accruing daily from July 9, 2020 to entry of judgment as calculated under 26 U.S.C. § 6621; (d) liquidated damages through July 8, 2020 in the same amount of $3,649.20; (e) pre-judgment interest to the entry of judgment in an equal amount as and for additional liquidated damages; (f) actual Audit costs in the amount of $3,882.19; (g) reasonable attorneys' and paralegal fees in the amount of $62,850.00; and (h) costs in the amount of $661.53. Pl. 56.1 Stmt., ¶109; ECF Doc. 51; Mele Decl., ¶¶35, 44-46, 49-69; Exs. 1, 8-11 to Mele Decl.; ECF Doc. 41-2, Agreement, Article XVI, Section 8(b) (bates stamped P0173); 29 U.S.C. § 1132(g)(2); Dooley Decl., ¶12; Ex. 1 to Dooley Decl.; Ex. 2 to Dooley Decl.; ECF Doc. 56; Listhaus Decl.; Ex. 1 to Listhaus Decl; 29 U.S.C. § 1132(g)(2).

Leone admits it is liable to the Funds for principal LECET contributions found in the Audit, and as such is liable to the Funds for: (a) delinquent LECET contributions in the principal amount of $60.65; (b) pre-judgment interest on the delinquent LECET contributions through July 8, 2020 at the rate of 9% annually in the amount of $31.07; and (c) additional pre-judgment interest on the delinquent LECET contributions accruing from July 9, 2020 to entry of judgment

at the rate of 9% annually. Pl. 56.1 Stmt., ¶110; ECF Doc. 51; Mele Decl., ¶¶35, 44-46, 70-74; Exs. 1, 8-11 to Mele Decl.; ECF Doc. 41-2, Agreement, Article XVI, Section 5 (bates stamped P0173); Dooley Decl., ¶12; Ex. 1 to Dooley Decl.; ECF Doc. 56; NY CPLR §§ 5001, 5002, 5004.

Leone admits it is liable to the Union for principal dues and PAC contributions found in the Audit, and as such is liable to the Union for: (a) delinquent dues in the principal amount of $1,151.82; (b) pre-judgment interest on the delinquent dues through July 8, 2020 at the rate of 9% annually in the amount of $590.85; (c) additional pre-judgment interest on the delinquent dues accruing from July 9, 2020 to entry of judgment at the rate of 9% annually; (d) delinquent PAC contributions in the principal amount of $60.65; (e) pre-judgment interest on the delinquent PAC contributions through July 8, 2020 at the rate of 9% annually in the amount of $31.07; and (f) additional pre-judgment interest on the delinquent PAC contributions accruing from July 9, 2020 to entry of judgment at the rate of 9% annually. Pl. 56.1 Stmt., ¶111; ECF Doc. 51; Mele Decl., ¶¶35, 44-46, 70, 75-82; Exs. 1, 8-11 to Mele Decl.; ECF Doc. 41-2, Agreement, Article XIX, Section 8 (bates stamped P0177-0178); Dooley Decl., ¶12; Ex. 1 to Dooley Decl.; ECF Doc. 56; NY CPLR §§ 5001, 5002, 5004.

The total amount of damages to date inclusive of all statutory and contractual damages, including actual Audit costs is $86,948.86.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Plaintiffs are entitled to summary judgment when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Once the moving party meets its initial

burden of establishing the absence of a genuine issue of material fact, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003) (internal citations omitted).

The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Nor may the non-movant "rest upon mere conclusory allegations or denials." *BellSouth Telecomms. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal citations omitted). Rather, it must provide admissible evidence and "may not rely simply on conclusory statements or on contention that the affidavits supporting the motion are not creditable." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

The Court's role is to "determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Liberty Lobby*, 477 U.S. at 251-52). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citations omitted).

## ARGUMENT

I. **Defendant admits liability to the Audit findings, and Plaintiffs are entitled to Judgment on the Audit as a matter of law.**

The Audit revealed that Leone failed to pay Plaintiffs required fringe benefit contributions in the principal amount of $13,979.83, required LECET contributions in the principal amount of $60.65, required dues deductions in the principal amount of $1,151.82, and required PAC contributions in the principal amount of $60.65 for work performed by its employees within the trade and geographic jurisdiction of the Agreement ("Covered Work")

during the Audit Period for a total principal deficiency of $15,252.95. Pl. 56.1 Stmt., ¶42; Declaration of Timothy P. Dooley ("Dooley Decl.") ¶12; Ex. 1 to Dooley Decl.; Mele Decl. ¶33.

Defendant admits it is liable to Plaintiffs for $13,979.83 in principal fringe benefit contributions, $60.65 in principal LECET contributions, $1,151.82 in principal dues checkoffs, and $60.65 in principal New York State Laborers Political Action Committee ("PAC") contributions, for the Audit period of January 1, 2014 to March 31, 2015. Pl. 56.1 Stmt., ¶¶59, 86, 89, 92.

Section 515 of ERISA creates a statutory obligation on every employer who is obligated to make contributions to a multiemployer plan under a collective bargaining agreement to make such contributions in accordance with the terms of the Agreement. 29 U.S.C. § 1145. Section 502(a)(3) of ERISA gives the fiduciaries of a plan the right to bring an action in federal court to enforce an employer's duty under Section 515. 29 U.S.C. § 1132(a)(3). Upon a finding that an employer has violated its obligations under Section 515 of ERISA, under Section 502(g)(2) of ERISA, a court shall award to the fund the unpaid contributions. 29 U.S.C. § 1132(g)(2)(A).

Section 301 of the LMRA authorizes suits for the violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce. 29 U.S.C. § 185; *Buffalo Laborers Welfare Fund v. Di Pizio Constr. Co*., 318 F. Supp. 3d 591, 601 (W.D.N.Y. 2018) (granting summary judgment on plaintiffs' Section 301 claim for unpaid dues and PAC contributions); *Buffalo Laborers Welfare Fund v. H&M Plumbing & Mech. Contracting, Inc.*, 2015 U.S. Dist. LEXIS 50342 (W.D.N.Y. Apr. 13, 2015) (establishing defendant employer's liability for delinquent dues checkoffs and PAC contributions as a breach of the collective bargaining agreement and arising under the LMRA).

It is undisputed that this Action arises under ERISA and the Taft-Hartley Act. It is undisputed that Plaintiffs have the authority to seek the fringe benefit contributions, LECET contributions, dues checkoffs, and PAC contributions. It is undisputed that pursuant to the Agreement, Defendant was obligated to pay Plaintiffs all required fringe benefit contributions, LECET contributions, dues checkoffs, and PAC contributions. Pl. 56.1 Stmt., ¶¶17-21; ECF Doc. 51; 29 U.S.C. § 1145; 29 U.S.C. § 185. It is undisputed that Leone is liable to Plaintiffs for contributions found due and owing pursuant to the Audit.

Even without Defendant's admission of liability on the Audit findings, the Audit would be sufficient for this Court to find that there are no material facts in dispute, and that contributions are due. *See e.g. Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. Eastport Excavation & Utils. Inc.*, 3 F.Supp. 3d 204, 216 (S.D.N.Y. 2014) (Courts "may rely on an audit or an auditor's report to prove that defendant employers did not make required contributions to funds."); *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs*., 2019 U.S. Dist. LEXIS 1144, at *7, *32 (S.D.N.Y. Jan. 3, 2019*) (Audit report that catalogued the name of each covered employee, dates and hours worked for employer, and the amounts owed to employees was reliable in granting summary judgment to plaintiffs where defendants never made specific objections to audit findings and admitted its employees performed Covered Work.).

Defendant admits it is liable to Plaintiffs on the Audit findings, and the Court should grant Plaintiffs summary judgment on the delinquent fringe benefit contributions in the principal amount of $13,979.83, the delinquent LECET contributions in the principal amount of $60.65, the unremitted dues checkoffs in the principal amount of $1,151.82, and the delinquent PAC contributions in the principal amount of $60.65.

**II.** **Plaintiffs are entitled to judgment on the statutory and contractual damages as a matter of law.**

A. Damages for Unpaid Fringe Benefit Contributions

ERISA and the Agreement, which tracks the language of ERISA, provide that once it is determined that contributions are due and owing and a judgment in favor of the plan or fund is awarded, an award of interest, liquidated damages and reasonable attorneys' fees and costs are mandatory. 29 U.S.C. § 1132(g)(2); Pl. 56.1 Stmt., ¶62.

Where a judgment is awarded to the Funds for delinquent contributions, an award of interest, liquidated damages, and reasonable attorneys' fees and costs is mandatory. *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co*., 935 F.3d 93, 98-99 (2d Cir. 2019) (An award of interest, statutory penalties, and attorneys' fees and costs under ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2) is mandatory.); *Rochester Laborers' Welfare-S.U.B. Fund v. Flower City Monitors, Inc.*, 2017 U.S. Dist. LEXIS 117080, at *5 (W.D.N.Y. July 26, 2017) (same); *Buffalo Laborers' Welfare Fund v. D. Land Constr. Co.,* 2010 U.S. Dist. LEXIS 103500, at *7, 2010 WL 3894987 (W.D.N.Y. Sept. 30, 2010) (An award of interest, statutory penalties, and attorneys' fees and costs under ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2) is mandatory.).

1. Interest

Section 1132(g)(2) provides that interest on unpaid fringe benefit contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code, 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2). The Agreement provides for interest on the unpaid fringe benefit contributions to be determined by using the rate prescribed by section 6621. Pl. 56.1 Stmt., ¶65. Interest begins to accrue from the date each monthly contribution is due. Monthly contributions are due on the 15th day of the month following the month in which the work for which contributions are due was performed.

Pl. 56.1 Stmt., ¶66. Interest on the unpaid fringe benefit contributions from June 15, 2014 through July 8, 2020 is $3,649.20. Pl. 56.1 Stmt., ¶68; Mele Decl., ¶¶54-60; Ex. 8 to Mele Decl. Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated interest on the unpaid fringe benefit contributions in the amount of $3,649.20, plus additional interest accrued from July 9, 2020 until the entry of judgment.

### 2. Liquidated Damages

The Agreement and ERISA provide for liquidated damages on unpaid fringe benefit contributions in an amount equal to the interest due. Pl. 56.1 Stmt., ¶71. Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated liquidated damages in the amount of $3,649.20, plus the additional interest accrued from July 9, 2020 until the entry of judgment.

### 3. Attorneys' Fees and Costs

In determining reasonable attorneys' fees in ERISA actions, courts apply the "lodestar" method which multiples the reasonable hours by a reasonable hourly rate for the services performed to determine a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). A request for reasonable fees must be supported by contemporaneous billing records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

An attorneys' hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 897 (1983). Here, the requested hourly rates are well within, if not below, the range of hourly rates awarded within this Circuit

for ERISA actions. *Mason Tenders District Council Welfare Fund v. Spray Force Systems, Inc., et al.*, Docket No. 17-cv-00052-LAK-KNF, Doc. 67 (S.D.N.Y. Nov. 1, 2018) (Finding Gorlick, Kravitz & Listhaus's hourly rates reasonable.); *Rochester Laborers' Welfare S.U.B. Fund v. Journee Constr., Inc.*, 305 F. Supp. 3d 444, 447 (W.D.N.Y. 2018) (finding $300/hour of senior counsel time and $165/hour of paralegal time to be reasonable and consistent with prevailing rates in the community); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (Hourly rates of $425 for partners and $300 for associates approved as reasonable and in line with prevailing rates.); *Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Constr. Corp*, 2008 U.S. Dist. LEXIS 108690 (S.D.N.Y. June 19, 2008) (Hourly rates of $350 and $325 for lead attorneys, $165 for junior attorneys, and $145 and $150 for litigation support staff approved as reasonable.), *adopted by* 2008 U.S. Dist. LEXIS 58018 (S.D.N.Y. July 29, 2008).

In evaluating whether the hours expended are reasonable, the court may rely on its own familiarity with the case and the evidentiary submissions and arguments of the parties. *See Beebe v. V&J Nat'l Enters., LLC*, 2020 U.S. Dist. LEXIS 96059, at *24 (W.D.N.Y. June 1, 2020). Here, in light of the contested issues from the start of the litigation, including responding to Defendant's threat of Rule 11 sanctions; the extensive motion practice, including opposing Defendant's pre-answer Motion to Dismiss, moving for permission to file a Sur-Reply, moving for partial summary judgment on liability, opposing Defendant's cross-motion for partial summary judgment, and now the instant motion for summary judgment on damages; extensive settlement negotiations, which though unsuccessful, nevertheless required significant attorney resources and time, the hours expended are reasonable.

Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated reasonable attorneys' and paralegal fees in the amount of $62,850.00, and costs in the amount of $661.53. Declaration of Bruce L. Listhaus ("Listhaus Decl."), ¶¶4-25; Ex. 1 to Listhaus Decl.; Ex. 2 to Listhaus Decl.

### 4. Actual Audit Costs

The Agreement provides that Leone is required to pay the cost of the audit in the event that the audit discloses a delinquency in excess of 10% of the prior year's contributions or $2,000.00, whichever is greater. Pl. 56.1 Stmt., ¶77; ECF Doc. 41-2, Agreement, Article XVI, Section 10(a) (bates stamped P0174). The Agreement also provides that in the event that formal proceedings are instituted before a Court of competent jurisdiction to collect delinquent contributions, a court renders judgment in favor of the Funds, the Employer shall pay to the Funds such other legal or equitable relief as the Court deems appropriate. Pl. 56.1 Stmt., ¶78; ECF Doc. 41-2, Agreement, Article XVI, Section 8(b) (bates stamped P0173).

In 2013, Leone paid $56,522.83 in fringe benefit contributions to the Funds. Pl. 56.1 Stmt., ¶80; Panek Decl., ¶¶8-21; Ex. 2 to Panek Decl. The audited principal fringe benefit delinquency of $13,979.83 is greater than 10% of the fringe benefit contributions Leone paid to the Funds in 2013. Pl. 56.1 Stmt., ¶81; Dooley Decl., ¶12; Ex. 1 to Dooley Decl.; Panek Decl., ¶¶8-21. As a result, Leone is contractually liable to the Funds for the costs of the Audit, which are $3,882.19. Pl. 56.1 Stmt., ¶¶82-83; ECF Doc. 41-2, Agreement, Article XVI, Section 10(a) (bates stamped P0174); Dooley Decl., ¶¶13-23; Ex. 2 to Dooley Decl.

Furthermore, an award of the actual costs of the Audit is entirely appropriate and recoverable under the provision for "other legal and equitable relief" of the Agreement and Section 502(g)(2)(E) of ERISA. 29 U.S.C. § 1132(g)(2); Pl. 56.1 Stmt., ¶78; ECF Doc. 41-2,

Agreement, Article XVI, Section 8(b) (bates stamped P0173); *see also Rochester Laborers' Welfare S.U.B. Fund v. Journee Constr., Inc.*, 305 F. Supp. 3d 444, 448 (W.D.N.Y. 2018) (awarding plaintiffs actual audit costs of $4,832.58); *Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.,* 2018 U.S. Dist. LEXIS 78427, 2018 WL 2138621 (S.D.N.Y. May 9, 2018) (awarding plaintiffs imputed audit costs in the amount of $38,927.39); *Buffalo Laborers Welfare Fund v. Elliott*, 2008 WL 907385, 2008 U.S. Dist. LEXIS 25610, at *10 (W.D.N.Y. Mar. 30, 2008) (awarding plaintiffs actual audit costs of $1,653.41); *Mason Tenders Dist. Council v. Aurash Constr. Corp.,* 2006 U.S. Dist. LEXIS 10250, at *14, 2006 WL 647884 (S.D.N.Y. Mar. 15, 2006) (awarding plaintiff imputed audit costs in the amount of $9,450.00); *Mason Tenders Dist. Council Welfare Fund v. City Stone, Inc*., 2006 U.S. Dist. LEXIS 334, 2006 WL 41285 (S.D.N.Y. Jan. 9, 2006) (awarding plaintiffs imputed audit costs in the amount of $14,558.41.).

Plaintiffs are entitled to judgment against Defendant in a total amount that includes actual Audit costs in the amount of $3,882.19. Pl. 56.1 Stmt., ¶¶77-84; Dooley Decl., ¶¶13-23; Ex. 2 to Dooley Decl.

B. Damages for Unpaid LECET Contributions

Defendant admits it is liable to the Funds for LECET contributions in the principal amount of $60.65. Pl. 56.1 Stmt., ¶¶85-87. Defendant's failure to make all required LECET contributions is a breach of the Agreement. Pl. 56.1 Stmt., ¶95. As Plaintiffs are entitled to summary judgment on their breach of contract claim under the Agreement for principal LECET contributions, they are entitled as a matter of law to interest on the delinquent LECET contributions at the rate of 9% annually. N.Y. C.P.L.R. § 5001 ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract."); N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum . . .").

Pre-judgment interest on the unpaid LECET contributions from June 15, 2014 through July 8, 2020 for the Audit is $31.07. Pl. 56.1 Stmt., ¶97; Mele Decl., ¶¶72-74; Ex. 9 to Mele Decl. Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated interest on the unpaid LECET contributions in the amount of $31.07, plus additional interest accrued from July 9, 2020 until the entry of judgment.

C. Damages for Unpaid Dues Checkoffs

Defendant admits it is liable to the Union for unremitted dues checkoffs in the principal amount $1,151.82. Pl. 56.1 Stmt., ¶¶88-89. Defendant's failure to remit all required dues checkoffs is a breach of the Agreement. Pl. 56.1 Stmt., ¶100. As the Union is entitled to summary judgment on its breach of contract claim under the Agreement for unremitted dues checkoffs, it is entitled as a matter of law to interest on the unpaid dues checkoffs at the rate of 9% annually. N.Y. C.P.L.R. §§ 5001 and 5004; *see also Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health & Safety Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 24 (S.D.N.Y. 2019) (applying an annual 9% interest rate on unpaid dues checkoffs pursuant to New York law); *Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.,* 2018 U.S. Dist. LEXIS 78427, at *13, 2018 WL 2138621 (S.D.N.Y. May 9, 2018) (applying an annual 9% interest rate on unpaid dues checkoffs and PAC contributions).

Interest on the unpaid dues checkoffs from June 15, 2014 through July 8, 2020 for the Audit is $590.85. Pl. 56.1 Stmt., ¶¶99-103; Mele Decl., ¶¶76-78; Ex. 10 to Mele Decl. Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated interest on the unpaid dues checkoffs in the amount of $590.85, plus additional interest accrued from July 9, 2020 until the entry of judgment.

D.  Damages for Unpaid PAC Contributions

Defendant admits it is liable to the Union for delinquent PAC contributions in the principal amount of $60.65. Pl. 56.1 Stmt., ¶¶91-92. Defendant's failure to deduct and remit all PAC contributions is a breach of the Agreement. Pl. 56.1 Stmt., ¶105.  As the Union is entitled to summary judgment on its breach of contract claim under the Agreement for unpaid PAC contributions, it is entitled as a matter of law to interest on the unpaid PAC contributions at the rate of 9% annually. N.Y. C.P.L.R. §§ 5001 and 5004; *see also LJC Dismantling Corp*., 400 F. Supp. 3d at 24 (applying an annual 9% interest rate on unpaid PAC contributions pursuant to New York law); *Kafka Constr., Inc.,* 2018 U.S. Dist. LEXIS 78427, at *13 (applying an annual 9% interest rate on unpaid dues checkoffs and PAC contributions).

Interest on the unpaid PAC contributions from June 15, 2014 through July 8, 2020 for the Audit is $31.07. Pl. 56.1 Stmt., ¶¶107-108; Mele Decl., ¶¶80-82; Ex. 11 to Mele Decl. Plaintiffs are entitled to judgment against Defendant in a total amount that includes mandated interest on the unpaid PAC contributions in the amount of $31.07, plus additional interest accrued from July 9, 2020 until the entry of judgment.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the Plaintiff Funds' motion for summary judgment against Defendant for: (a) principal fringe benefit contributions in the amount of $13,979.83; (b) pre-judgment interest on the delinquent fringe benefit contributions through July 8, 2020 in the amount of $3,649.20 as calculated under 26 U.S.C. § 6621; (c) additional pre-judgment interest on the delinquent fringe benefit contributions accruing daily from July 9, 2020 to entry of judgment as calculated under 26 U.S.C. § 6621; (d) liquidated damages through July 8, 2020 in the same amount of $3,649.20; (e) pre-judgment interest to the entry of judgment in an equal amount as and for additional liquidated damages; (f)

actual Audit costs in the amount of $3,882.19; (g) reasonable attorneys' and paralegal fees in the amount of $62,850.00; (h) costs in the amount of $661.53; (i) delinquent LECET contributions in the principal amount of $60.65; (j) pre-judgment interest on the delinquent LECET contributions through July 8, 2020 at the rate of 9% annually in the amount of $31.07; and (k) additional pre-judgment interest on the delinquent LECET contributions accruing from July 9, 2020 to entry of judgment at the rate of 9% annually.

Plaintiffs respectfully request that the Court grants Plaintiff Union's motion for summary judgment against Defendant for: (a) delinquent dues in the principal amount of $1,151.82; (b) pre-judgment interest on the delinquent dues through July 8, 2020 at the rate of 9% annually in the amount of $590.85; (c) additional pre-judgment interest on the delinquent dues accruing from July 9, 2020 to entry of judgment at the rate of 9% annually; (d) delinquent PAC contributions in the principal amount of $60.65; (e) pre-judgment interest on the delinquent PAC contributions through July 8, 2020 at the rate of 9% annually in the amount of $31.07; and (f) additional pre-judgment interest on the delinquent PAC contributions accruing from July 9, 2020 to entry of judgment at the rate of 9% annually.

Dated: New York, New York
        July 8, 2020

                                    GORLICK, KRAVITZ & LISTHAUS, P.C.


                            By:  _____/s/ Joy K. Mele_____
                                 Joy K. Mele (JM0207)
                                 Jennifer M. Catera (JC6943)
                                 29 Broadway, 20th Floor
                                 New York, New York 10006
                                 (212) 269-2500
                                 *Attorneys for Plaintiffs*