UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BUFFALO LABORERS WELFARE FUND; BUFFALO
LABORERS PENSION FUND; BUFFALO LABORERS
TRAINING FUND; BUFFALO LABORERS
SECURITY FUND; THOMAS L. PANEK, in his
fiduciary capacity as ADMINISTRATOR; LABORERS
EMPLOYERS COOPERATION AND EDUCATION
TRUST; and LABORERS' LOCAL 210,
INTERNATIONAL UNION OF NORTH AMERICA,

       Plaintiffs,

  v.              Civil Action No: 1:18-cv-00544

LEONE CONSTRUCTION, INC.,

       Defendant.

_____


**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**


      **RUPP BAASE PFALZGRAF CUNNINGHAM, LLC**
      Attorneys for Defendant
      Leone Construction, Inc.
      R. Anthony Rupp III, Esq., of Counsel
      Matthew J. Smith, Esq., of Counsel
      1600 Liberty Building
      Buffalo, New York  14202
      (716) 854-3400
      rupp@ruppbaase.com
      smith@ruppbaase.com

## PRELIMINARY STATEMENT

Leone Construction, Inc. ("Leone") submits this memorandum in opposition to plaintiffs', Buffalo Laborers Welfare Fund; Buffalo Laborers Pension Fund; Buffalo Laborers Training Fund; Buffalo Laborers Security Fund; Thomas L. Panek, in his fiduciary capacity as Administrator; Laborers Employers Cooperation and Education Trust; and Laborers' Local 210, International Union of North America (collectively "plaintiffs" or the "Union"), motion for summary judgment on damages.  *See* Dkt. Nos. 65-71.

To be perfectly clear, Leone's opposition is limited solely to plaintiffs' request for an award of "reasonable attorneys' fees" in an amount more than twice the deficiency *plus* interest discovered during the audit – which amount is not in dispute.  The plaintiffs accrued unnecessary legal expenses throughout this litigation that grossly inflated the requested attorneys' fees beyond a "reasonable" amount.  Further, despite initially seeking an audit period of 53 months, plaintiffs were limited to a 17-month period after the discovery of a previously undisclosed letter terminating the parties' contract.  It therefore respectfully is submitted that this Court deny plaintiffs' motion insofar as it seeks $62,850.00 in attorneys' fees.

## FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history underlying Leone's motion more fully is set forth in the accompanying Declaration of R. Anthony Rupp III, Esq., sworn to on July 31, 2020 ("Rupp Decl."), with exhibits, and Leone Construction Inc.'s Counterstatement of Undisputed Material Facts ("SOMF") dated July 31, 2020, to which this Court respectfully is referred.

As this Court is aware, this case revolves around a certain 2008-2014 Highway-Heavy, Utility, and Tunnel Agreement Between Laborers International Union of North America Upstate New York Laborers District Council Local 210 and Employer entered into by the Union and Leone on or about August 12, 2011.  *See* Dkt. No. 1 (hereinafter the "Complaint"); Dkt. No. 7-2 (the "Agreement").  Prior to commencing this action, on April 25, 2018, plaintiffs demanded information to conduct an audit of Leone's books and records for the time period January 1, 2014 through the present, and provided an arbitrary 10-day deadline to comply. *See* Dkt. No. 7-1 ("Rupp 2018 Decl.") at ¶ 9.  At that time, Leone took the position that the Agreement had been terminated in 2014 and therefore it was not bound by the Agreement or required to permit an audit for the period requested by plaintiffs.  *Id.* at ¶¶ 7-8.  Specifically, on June 12, 2014, the Union's business manager, Samuel Capitano, sent a letter to Leone stating:

> As per our conversation, our collective bargaining agreement expired on March 31, 2014.  In order to continue [accepting] benefits on behalf [of] your employees, Laborers' Local 210 needs a fully executed contract with Leone Construction Inc.  Please sign both copies and mail them back to my office at the address below.  Once received, I will sign both copies and mail back to your office a signed original for files.  I will retain the other signed original for my office.

Dkt. No. 41-3 (the "Letter").

In light of Leone's position that the Agreement had been terminated, and in response to plaintiffs' demand for an audit, Leone's counsel responded by letter dated May 14, 2018 stating in part:

> Your letter seeks an audit for the period January 1, 2014 through the present, and references Leone's collective bargaining agreement with [the Union].  My client's principal tells me that Leone has not been a signatory to the collective bargaining agreement with [the Union] since 2014.

2

> Kindly check your records and confirm the period of the audit that
> you seek.  Leone stands ready to comply with your audit request.

*See* Rupp Decl. at Exh. A.  Coincidentally, the same day that Leone's response was mailed to

plaintiffs' counsel, plaintiffs commenced this litigation.  *See* Dkt. No. 1.  The Complaint alleged

six causes of action, the relief sought can be summarized briefly as:

1. An Order requiring Leone to submit to an audit of its books and records by the Union for the period of January 1, 2014 *through the present*;

2. Judgment based on any deficiencies identified during the audit, plus the costs to conduct the audit;

3. Injunctive relief requiring Leone and its officers, agents, servants, and employees to permit and cooperate in the conduct of the audit in accordance with the Agreement; and,

4. Attorneys' fees and costs.

*See id* at pp. 12-13.  As Leone's May 14, 2018 letter demonstrates, it was unnecessary for

plaintiffs' to seek injunctive relief as Leone was ready and willing to cooperate with an audit.

The central focus of this litigation therefore has been the question of "for what period of time

was the Agreement in effect and therefore Leone's books and records are subject to an audit?"

The question was answered on December 6, 2019, when this Court held that "Leone shall submit

to the [Union's] audit of its books and records for the period from January 1, 2014 to and

including March 31, 2015."  Dkt. No. 51 at p. 6.


Following the Court's December 6, 2019 Decision and Order, the Union

conducted an audit of Leone's books and records for the period from January 1, 2014 through

March 31, 2015.  *See* Dkt. No. 68 ("Dooley Decl.) at ¶ 9.  Following the audit, plaintiffs' sought

Leone's consent to a proposed judgment of $89,879.12.  *See* Dkt. No. 69 ("Mele Decl.")

at Exh. 2.  Of that amount, $28,634.12 constituted the cost of conducting the audit, and the

delinquencies and interest discovered during the audit.  *See id.*  The remaining $61,345.00,

according the plaintiffs, constituted "reasonable attorneys' fees."  *Id.*  As demonstrated by

plaintiffs' motion and during post-audit conferences, Leone does not dispute the principal

delinquencies, plus interest, discovered during the audit.  *See* Dkt. Nos. 59-64; Mele Decl.

at Exhs. 3, 5, 6.  However, Leone disputes that the $62,850.00 in attorneys' fees and paralegal

time sought by the plaintiffs on this motion is reasonable.


### ARGUMENT

### PLAINTIFFS' INCURRED EXCESSIVE ATTORNEYS' FEES AS A RESULT OF THEIR OWN CONDUCT AND THEREFORE AN AWARD OF $62,850.00 IN ATTORNEYS' FEES IS UNREASONABLE

As an initial matter, the sole reason that parties were unable to stipulate to

damages, thus prompting this motion, was the plaintiffs' refusal to provide supporting

documentation to Leone with regard to attorneys' fees.  *See* Mele Decl. at Exh. 4 (Mele: "We

will not provide you with documentation supporting our attorneys' fees and costs.  [I]f you do

not consent to attorneys' fees and costs, we will make a motion and at that time submit all

supporting documentation."); *see also id.* at Exh. 5 (Rupp: "I think I already agreed to the

principal audited delinquency . . . I also can agree to interest on that."); *id.* at Exh. 6 (Rupp: "I

am fine with the audit findings.").  From this litigation's inception Leone has tried to be

reasonable and work with plaintiffs to resolve the disputed issues.  At each instance, it was a lack

of reasonableness by plaintiffs that led to subsequent motion practice, failed settlement

negotiations, and plaintiffs' outrageous legal expenses.  Indeed, shortly after this litigation was

commenced Leone ***offered to let the Union audit its books and records for the period of***

***January 1, 2014 through June 30, 2015***.  Specifically, on June 28, 2018 plaintiffs were advised:

4

> For the record, my client does not deny that to the extent the CBA applies, its terms and the case law under ERISA allow your client to conduct an audit under certain circumstances. However we did not agree with the period that you requested for the audit because Leone was not a signatory to the new CBA that took effect in 2014. Your response was to reiterate your demand for an audit through to the present, claiming that the old CBA remained in effect by virtue of the "evergreen" clause. I continue to disagree with your position. Your clients made a written proposal to Leone in the form of the new CBA, which contained provisions that clearly changed the terms of the old CBA. This constituted a written offer, and that offer was rejected.
>
> *       *       *
>
> In short, my client remains willing to allow a limited audit of its books and records for an appropriate time frame, under the terms of the old CBA, relating to any union employees that Leone continue to employer after the new CBA went into effect. It is my understanding that Leone kept one Local 210 employee on its payroll for a short period of time following the expiration of the old CBA and the commencement of the new one. Even your records seem to show that remittances were made for this employee only for an 18-month period. However long the period of employment was, Leone intended to make remittances to your client at the new CBA rat[e] as a courtesy to this employee, ***and is happy to allow an audit to provide that it did so***."

Rupp Decl. at Exh. B, pp. 2-3 (emphasis added). Plaintiffs continued to pursue an unlimited audit period and maintained that the Agreement still was in effect until Leone discovered the Letter from Sam Capitano terminating the Agreement. *See* Dkt. No. 51; *see also* Letter. At that point, the Union effectively had litigated itself into a worse position than it would have been had it accepted Leone's offer ***18 months earlier***.

Because Leone is not disputing the audit findings, it acknowledges that 29 U.S.C. § 1132(g)(2) mandates an award of certain statutory damages. However, with regard to legal expenses the plaintiffs' are entitled only to "***reasonable*** attorney's fees and costs of the

action."  *Id.* at § 1132(g)(2)(D).  Leone does not dispute the hourly rates charged by plaintiffs'

counsel, however, the amount of hours is excessive in light of the fact that this litigation should

have terminated one month after commencing.  "[T]he number of hours counsel spends on an

action will be determined unreasonable if found to be excessive, duplicative, or unnecessary.  If

the number of hours billed is determined to be unreasonable, the court may exclude that portion

of hours it finds to be excessive or unreasonable in its attorney's fees calculations."  *Bakery and*

*Confectionary Union and Industry Intern. Pension Fund v. Ges Bake Shop, Inc.*,

2014 WL 1159821, at *10 (E.D.N.Y. Mar. 21, 2014).


        Here, it respectfully is submitted that on June 28, 2018 Leone offered plaintiffs

the opportunity to audit its books and records for the period January 1, 2014 through June

31, 2015 despite its position that it did not have an obligation to do so.

*See* Rupp Decl. at Exh. B.  The plaintiffs refused to resolve this litigation at that time.  Then,

after this Court held that plaintiffs could audit Leone for the period from January 1, 2014 through

March 31, 2015 *only*, Leone fully complied with the audit and did not dispute any of the findings

with regard to delinquency and interest payments.  The only dispute Leone has had with regard

to the judgment is the plaintiffs' excessive attorneys' fees and refusal to provide supporting

documentation for damages until making this motion.  *See* Mele Decl. at Exh. 4.  Put another

way, since June 28, 2018 at the earliest, or January 21, 2020 at the latest, *plaintiffs have accrued*

*attorneys' fees for the sake of accruing attorneys' fees*.  Plaintiffs are in exactly the same

position they would have been had they accepted Leone's offer on June 28, 2018, with the

exception that their attorneys' fees have grown to more than twice the deficiency *plus* interest.

Setting aside the foregoing and that all of the legal fees incurred by plaintiffs' after June 28, 2018 were unnecessary, a review of ERISA actions in the Western District and Second Circuit strongly suggests that the plaintiffs' request for attorneys' fees exceeding twice the undisputed principal and interest award is far from reasonable. *See Buffalo Laborers' Welfare Fund v. D. Land Const. Co., Inc.*, 2010 WL 3894987 (W.D.N.Y. Sept. 30, 2010) (holding that $10,861.50 constituted reasonable attorneys' fees as part of a partial award of $27,973.14 where defendant also was held to be in contempt); *Massaro v. MAF Systems, Inc.*, 1990 WL 33169 (W.D.N.Y. Mar. 20, 1990) (holding that $4,597.50 constituted reasonable attorneys' fees, total award $22,811.38); *Local 445 Welfare Fund v. Wein*, 855 F.2d 62 (2d Cir. 1988) (holding that $27,321.47 constituted reasonable attorneys' fees, total award $108,472.76); *Niagara-Genesee and Vicinity Carpenters Local 280 v. MAF Systems, Inc.*, 1991 WL 46508 (W.D.N.Y. Apr. 1, 1991) (holding that $2,970 was an unreasonable amount of attorneys' fees where the recovered delinquency was $1,144.88). Here, an award of $62,850.00 is unreasonable when considering the context and background of this litigation. In reviewing plaintiffs' legal bills, an award of $5,322.50 in attorneys' fees is appropriate as that is the time spent pre-complaint through plaintiffs' response to Leone's June 28, 2018 offer. *See* Dkt. No. 70-1.

## CONCLUSION

In summary, plaintiffs refused to resolve this matter at every turn, and this two-year old litigation should have settled after two months.  Leone does not dispute the audit period or the findings from the audit – indeed, it always had taken the position that it would abide by any audit so long as it was for an appropriate period of time.  However, the attorneys' fees requested by the plaintiffs are unreasonable given the sole reason plaintiffs incurred such excessive fees was their own failure to negotiate and resolve this matter.  Therefore, it respectfully is submitted that this Court deny plaintiffs' motion insofar as it requests $62,850.00 in attorneys' fees.

Dated: July 31, 2020
       Buffalo, New York

**RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
Attorneys for Defendant

By: _____/s R. Anthony Rupp III_____
        R. Anthony Rupp III, Esq., of Counsel
        Matthew J. Smith, Esq., of Counsel
        1600 Liberty Building
        Buffalo, New York  14202
        (716) 854-3400
        rupp@ruppbaase.com
        smith@ruppbaase.com

TO:    Bruce L. Listhaus, Esq.
       Joy K. Mele, Esq.
       Attorneys for Plaintiffs
       17 State Street, 4th Floor
       New York, New York 10004
       blisthaus@gkllaw.com
       jmele@gkllaw.com
       Telephone: (212) 269-2500

8