UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BUFFALO LABORERS WELFARE FUND;
BUFFALO LABORERS PENSION FUND;            **DECISION AND ORDER**
BUFFALO LABORERS TRAINING FUND;
BUFFALO LABORERS SECURITY FUND;           18-CV-00544-JJM
THOMAS L. PANEK, in his fiduciary capacity
as ADMINIRATOR; LABORERS EMPLOYERS
COOPERATION AND EDUCATION TRUST;
and LABORERS' LOCAL 210, INTERNATIONAL
UNION OF NORTH AMERICA,

                                                  Plaintiffs,

v.

LEONE CONSTRUCTION, INC.,

                                                  Defendant.
_____

        The parties have consented to my jurisdiction over this ERISA action [21].[1] Before the court is plaintiffs' motion for summary judgment [65] seeking various forms of delinquent payments from defendant Leone Construction, Inc., along with "reasonable attorneys' and paralegal fees in the amount of $62,850.00". Plaintiffs' Memorandum of Law [71], p. 21. With the exception of what it considers to be "the excessively high attorneys' fees sought", Leone consents to the relief requested. Rupp Declaration [72], ¶4; Leone's Memorandum of Law [72-4], p. 2.

        The parties are familiar with the relevant facts, which will be discussed only to the extent necessary for resolution of the pending motion. Having reviewed the parties' submissions [65-71, 72-74] and heard oral argument on August 27, 2020 [75], for the following

---

[1]     Bracketed references are to CM/ECF docket entries., Unless otherwise indicated, page references are to the documents themselves rather than to CM/ECF pagination.

reasons plaintiffs' request for attorneys' fees is granted in part and denied in part, and the motion is otherwise granted as unopposed.

## BACKGROUND

In commencing this action on May 14, 2018, plaintiffs alleged that the 2008-2014 collective bargaining agreement ("CBA") between Leone and plaintiff Laborers' Local 210 "has not been . . . terminated and remains in effect", and demanded an order permitting "an audit of Leone's books and records for the period January 1,2014 through the present". Complaint [1], ¶¶17, 25. By letter dated June 18, 2018, Leone's attorney (R. Anthony Rupp III) advised plaintiffs' attorney (Joy K. Mele) that because Local 210 had presented Leone with a new CBA in 2014, the prior CBA "expired . . . as of March 31, 2014. Consequently, Leone is not bound by the CBA . . . and it will not submit to an audit of its books and records as requested." [74-1], p. 1.

On July 31, 2019, Mr. Rupp provided Ms. Mele and the court with a June 12, 2014 letter addressed to Leone from Sam Capitano, Local 210's business manager [39-3]. In that letter, Capitano stated that "our collective bargaining agreement expired on March 31, 2014". At an August 6, 2019 status conference [35], Mr. Rupp explained that Leone's president, John Leone, had "stumbled across" the Capitano letter while looking for something else, and Ms. Mele admitted that the delay in locating the letter was due in part to "poor record keeping on the union's part".[2]

In light of the Capitano letter, plaintiffs abandoned their position that the CBA had never terminated. In moving for summary judgment, they argued instead that the CBA had "terminated on March 31, 2015", and sought "an audit of Leone's books and records for the

---

[2]   Quoted from the digital recording of the conference.

period of January 1, 2014 to March 31, 2015." Plaintiffs' Memorandum of Law [41-15], p. 8. By contrast, Leone argued that the CBA "terminated on March 31, 2014", and that the "audit of Leone's records should be limited to a period in time no longer than January 1, 2014 through March 31, 2014". Leone's Memorandum of Law [39-4], p. 8. By Decision and Order dated December 6, 2019, I agreed with plaintiffs, and directed Leone to "submit to the Funds' audit of its books and records for the period from January 1, 2014 to and including March 31, 2015". [51], p. 6. Following completion of that audit, the pending motion ensued.

## DISCUSSION

"When a plaintiff prevails in an ERISA action for unpaid contributions, an award of attorneys' fees and costs under ERISA §502(g)(2)(D) [29 U.S.C. §1132(g)(2)(D)] is mandatory. While the award itself is mandatory, the amount of any such award rests within the Court's discretion." Annuity, Welfare & Apprenticeship Skill Improvement and Safety Funds of International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F. Supp. 3d 204, 218 (S.D.N.Y. 2014); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1043 (E.D.N.Y. 1993).

The fact that Leone is no longer in business is irrelevant in determining the amount of the award. *See* Mason Tenders District Council v. Aurash Construction Corp., 2006 WL 647884, \*3, n. 3 (S.D.N.Y. 2006) ("Although the ability of the offending party to satisfy an award of attorney's fees is a factor which must be considered in awarding discretionary attorney's fees under ERISA section 502(g)(1) . . . this application is one for mandatory attorney's fees under ERISA section 502(g)(2) such that Aurash's lack-of-funds argument is without merit").

"In determining reasonable attorneys' fees in ERISA actions, courts apply the 'lodestar' method which multiplies the reasonable hours by a reasonable hourly rate for the services performed to determine a 'presumptively reasonable fee'." Plaintiffs' Memorandum of Law [71], p. 15; Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Although Leone "does not dispute the hourly rates charged by plaintiffs' counsel", it argues that "the amount of hours is excessive". Leone's Memorandum of Law [72-4], p. 6.

I agree. While plaintiffs argue that "they were entirely successful on their claim for an audit" (plaintiffs' Reply Memorandum [73], p. 10), clearly they were not. As plaintiffs themselves acknowledge, the effect of the Capitano letter [39-3] was to limit their right to audit Leone's books and records to the period ending March 31, 2015, rather than the much longer period they had demanded in their Complaint ([1], ¶25). Had they brought that letter to the court's attention at the outset, this case would have been resolved much sooner.

Their failure to do so is not excused by plaintiff Local 210's allegedly "poor record keeping", since the union is "deemed to have notice of its own actions", In re Sunnyside Beverage, Inc., 104 B.R. 51, 55 (Bankr. N.D. Ind. 1989), and "is charged with knowledge of what appears in its own records". Washington National Insurance Co. v. Reginato's Estate, 272 F. Supp. 1016, 1021 (N.D. Cal. 1966), aff'd, 382 F.2d 1021 (9th Cir. 1967); Holczer v. Independent Brass City Lodge, 104 Conn. 539, 133 A. 666, 667 (Conn. 1926).[3] Moreover, "[i]t is fair to assume, in most contexts, that lawyers know what their clients know". Burns v. Imagine Films Entertainment, Inc., 165 F.R.D. 381, 390 (W.D.N.Y. 1996). Therefore, whether or not plaintiffs' counsel actually knew of the existence of the Capitano letter, they are deemed to have known that it existed.

---

[3]  While Leone likewise should have discovered the Capitano letter much earlier, its failure to do so does not excuse plaintiffs' inaction.

In deciding what constitutes "reasonable hours", the relevant inquiry is "what would be reasonably necessary to litigate this . . . case". King v. JCS Enterprises, Inc., 325 F. Supp. 2d 162, 168 (E.D.N.Y. 2004). "In calculating the number of 'reasonable hours,' the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Clarke, 960 F.2d at 1153. In light of the Capitano letter, much of the motion practice prior to plaintiffs' successful September 20, 2019 motion for partial summary judgment [40] was in my view not reasonably necessary to litigate this case.

"Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998); New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) ("it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application"). Therefore, based on my familiarity and experience with this case, I believe that it is appropriate to reduce the requested fee ($62,850) by 30%, for an award of $43,995.

Although that amount is still significantly greater than the fringe benefit and other payments which are also being awarded, "nothing in the text of [29 U.S.C. § 1132(g)(2)(D)] suggests that to be 'reasonable,' fees must be proportional" to the amount of the recovery. Fisher v. SD Protection Inc., 948 F.3d 593, 603 (2d Cir. 2020) (*quoting* United Automobile Workers Local 259 Social Security Department v. Metro Auto Center, 501 F.3d 283, 294 (3d Cir. 2007)). "ERISA clearly assumes that benefit plan trustees will act to ensure that a plan receives all funds to which it is entitled . . . . When delinquencies are small, the cost of recovery may be

disproportionate, and requiring proportionality would, in effect, discourage plans from taking their claims to federal courts. Moreover, § 1132(g)(2) was enacted to encourage employers to make timely contributions, assist plans in their recovery of delinquent contributions, and discourage excessive litigation by defendants." Local 259, 501 F.3d at 294-95.

## CONCLUSION

For these reasons, plaintiffs' motion for summary judgment [65] is granted to the extent of awarding reasonable attorneys' and paralegal fees in the amount of $43,995, plus the other uncontested relief listed at pp. 20-21 of plaintiffs' Memorandum of Law [71], but is otherwise denied. Counsel shall prepare and submit a judgment accordingly.

SO ORDERED.

Dated: October 23, 2020

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge